IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MATTHEW WATTS, ARMINDA WATTS,
and ARMINDA WATTS, as mother and
Next Friend of Madeline Watts and Mollie Watts,

                Plaintiffs,

v.                                                      CIVIL  ACTION  NO.  3:11-0586

ST. MARY'S MEDICAL CENTER, INC., and
JOHN DOES "1" through "5",

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment. (ECF No. 108).  For the reasons stated below, the motion is **GRANTED**.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(a).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete

evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

In their motion, Plaintiffs seek a ruling by the Court that the $500,000 damage cap under West Virginia Code § 55-7B-9c, for injuries resulting from emergency medical care, does not apply to their case. In the alternative, if it does apply, Plaintiffs move the Court to find the provision unconstitutional. West Virginia Code § 55-7B-9c provides, in part:

> (a) In any action brought under this article for injury . . . of a patient as a result of health care services or assistance rendered in good faith and necessitated by an emergency condition for which the patient enters a health care facility designated by the office of emergency medical services as a trauma center, . . ., the total amount of civil damages recoverable shall not exceed five hundred thousand dollars, exclusive of interest computed from the date of judgment.

W. Va. Code § 55-7B-9c, in part. The parties do not dispute that Defendant St. Mary's Medical Center (hereinafter St. Mary's) is a designated trauma center for purposes of the statute. However, the parties sharply disagree as to whether Mr. Watts fell within the "emergency condition" requirement of the statute. West Virginia Code § 55-7B-2(d) defines an "emergency condition" as "any acute traumatic injury or acute medical condition which, according to standardized criteria for

triage, involves a significant risk of death or the precipitation of significant complications or disabilities, [or] impairment of bodily functions[.]" W. Va. Code § 55-7B-2(d).

In West Virginia, the standardized criteria for triage are established in a document entitled the "State Trauma and Emergency Care System Emergency Health Care Procedures and Triage Procedures for Designated Trauma Centers" (hereafter referred to as the "Emergency Triage Procedures"). Pursuant to these Procedures, the following four levels of triage must be utilized when categorizing patients:

> **Category I - RESUSCITATION**
>
> Conditions which are an immediate threat to life and/or involves a significant risk of death to the patient. Patient must be triaged immediately to a treatment area with initiation of basic resuscitation measures.
>
> **Category II - EMERGENT**
>
> Conditions which involve a significant risk of death or present a significant risk of precipitation of significant complications to the patient. Patient must be triaged rapidly to a treatment area with initiation of basic monitoring and treatment procedures.
>
> **Category III - URGENT**
>
> Conditions which involve a significant risk of complications or disabilities, or impairment of bodily functions. Patient must be triaged, but does not require rapid intervention, however, must be reassessed at least every hour to determine any change in triage level.

**Category IV - NON-URGENT**

Conditions which do not involve a significant risk of death or the precipitation of significant complications or disabilities, [or] impairment of bodily functions, . . . . Patient must be triaged, but does not require rapid intervention. Must be reassessed at least every two (2) hours to determine any change in triage level.

*Emergency Triage Procedures*, at 2. The first three categories all involve situations which fall within the definition of "emergency condition" under the statute. However, the fourth category specifically does *not* fall within that definition.

The Emergency Triage Procedures goes on to give examples of conditions which may fall within each category. Of relevance to this case, the Emergency Triage Procedures provides that, with respect to Category III - Urgent, "[e]xamples of "Usual" presentations may include, but is not limited to: . . . Minor head trauma - no LOC/no vomiting . . . [and] Back Pain - minor back pain 'pulled something' - muscle spasms; localized back pain (4-7/10)." *Id*. at 6. With respect to the Non-Urgent category, the Emergency Triage Procedures states, in part, "[e]xamples of 'Usual" presentations may include but is not limited to: . . . Minor trauma not necessarily acute[,] Minor symptoms[,] Pain scale < 4[.]" *Id*. at 9. St. Mary's has adopted these four tiers nearly verbatim in its Policy and Procedures Manual. It also lists "Minor head trauma without loss of consciousness or vomiting" under its "Category 3" as an "example[] of 'Usual presentations'" and "Minor trauma" and "Minor symptoms" under its "Category 4."[1] *Policy and Procedures Manual*, at 1, 3 & 4. St.

---

[1] The Policy and Procedures Manual also includes in Category 3 "[a]cute back pain secondary to a new injury[.]" *Id*. at 3. It does not specifically include "Back pain - minor back pain 'pulled something' - muscle spasms; localized back pain (4-7/10)[.]" *Emergency Triage Procedures*, at 6.

Mary's argues that Mr. Watts' condition when he arrived at the hospital fell within Category 3 and, therefore, West Virginia § 55-7B-9c applies to this case. Plaintiffs assert, however, St. Mary's actually classified him as a "non-urgent" patient in Category 4. Thus, the statute does not apply.

Turning to the facts of this case, the parties agree that on September 6, 2009, Mr. Watts presented himself to St. Mary's Emergency Department, after he hit his head on the bottom of a swimming pool earlier that day. Plaintiff represents that he did not loose consciousness and, afterwards, he went to church and did several things in the afternoon and evening before he went to the hospital. At 9:46 p.m., Mr. Watts was triaged and an Emergency Department nurse classified his condition as "non-urgent," placed him on the "Fast Track," and sent him to the B side of the emergency department.[2] *Aff. of Shane Bowen, M.D.*, at 1; *Dep. of Debra L. Parsons, R.N.*, at 45, & 50-51. The "Fast Track" form is used for patients who are considered "non-urgent." *See Dep. of Parsons*, at 45. On the Fast Track form used for Mr. Watts, it is noted that he complained of neck pain without loss of consciousness, with a scale of pain of 6 out of 10.

Based upon the nature of his injury and his degree of pain, St. Mary's argues that Mr. Watts fell within Category III of the Emergency Triage Procedures, that is, "Minor head trauma - no LOC" and "localized back pain (4-7/10)." *Emergency Triage Procedures*, at 6. However, at the time Mr. Watts was being treated, St. Mary's did not categorize him as a patient under Category III. Instead, he was categorized as a "non-urgent" patient under Category IV. The Court finds it would

---

[2]Mr. Watts claims that, as he was being evaluated in the radiology department, he fell and sustained additional injuries for which is the basis of this lawsuit.

be incongruous to afford St. Mary's the protection of the liability cap for emergency care when it did not consider Mr. Watts as an emergency patient. It is the actual classification Mr. Watts was given that must control whether the statute applies or not.

St. Mary's further argues that a nurse's misclassification of a patient cannot control "the application of the clear and plain language of the Code and triage procedures." *Def.'s Resp. in Opp. to Pls.' Mot. for Part. Summ. J.*, at 5-6. If the Court were to assume that Mr. Watts was improperly classified under Category IV, then St. Mary's violated the Emergency Triage Procedures and its own manual with respect to the classifications. West Virginia Code § 55-7B-9c(f)(2) provides that the $500,000 cap in subsection (a) does not apply when there is a clear violation of the written protocols. Specifically, this section states, in relevant part:

> (f) The limitation on liability provided under subsection (a) of this section does not apply where health care or assistance for the emergency condition is rendered:
>
> \*     \*     \*
>
> (2) In clear violation of established written protocols for triage and emergency health care procedures developed by the office of emergency medical services in accordance with subsection (e) of this section.

W. Va. § 55-7B-9c(f)(2), in part. In other words, if St. Mary's wrongly classified Mr. Watts as a Category IV when he clearly should have been classified as a Category III under the written protocols, the cap also does not apply by virtue of the statutory language itself.

-6-

Thus, in sum, because Mr. Watts was categorized under Category IV, the liability cap does not apply; he was a "non-urgent" patient and does not fall within the definition of an "emergency condition" as contained in West Virginia Code § 55-7B-2(d). If Mr. Watts should have been assigned to Category III, but was not, the liability cap still does not apply because (1) in actuality he was assigned to Category IV and St. Mary's should not get the benefit of the cap and (2) the improper assignment violated the clearly established protocols and the statute provides the cap does not apply. Accordingly, for these reasons, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 108).[3]

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

                    ENTER:        October 30, 2012

                    ROBERT C. CHAMBERS
                    UNITED STATES DISTRICT JUDGE

---

[3] As the Court finds the liability limit does not apply, the Court does not reach the constitutional issue.